**QSI–FOSTORIA DC, LLC, Plaintiff,**

v.

**GENERAL ELECTRIC CAPITAL, etc., Defendant.**

**No. 3:02 CV 7466.**

United States District Court, N.D. Ohio, Western Division.

Aug. 17, 2004.

---

James H. O'Doherty, Shumaker, Loop & Kendrick, Thomas P. Dillon, Shumaker, Loop & Kendrick, Toledo, OH, for QSI–Fostoria DC, LLC.

J. Kenneth Thien, Porter, Wright, Morris & Arthur, Joseph W. Ryan, Jr., Porter, Wright, Morris & Arthur, Thomas A. Young, Porter, Wright, Morris & Arthur, Columbus, OH, for BACM 2001–1 Central Park West, LLC.

Dusty R. Tinsley, Cooper & Walinski, Toledo, OH, Jonathan M. Borg, Pitney, Hardin, Kipp & Szuch, New York City, Margaret J. Lockhart, Cooper & Walinski, Toledo, OH, Ronald S. Beacher, Pitney, Hardin, Kipp & Szuch LLP, New York City, for General Electric Capital Business Asset Funding Corporation.

## ORDER

CARR, District Judge.

This is a diversity suit brought by the former owner, QSI–Fostoria DC, LLC (QSI), of a building that it leased to Quality Farm and Fleet (Quality) for use as a distribution center. To finance its purchase of the building, QSI obtained financing from and gave a mortgage to Bridger Commercial Funding, LLC (Bridger).

The tenant, Quality, leased a material handling system from defendant General Electric Capital Business Asset Funding Corporation (GE Capital). As part of its arrangement with Quality, GE Capital required the landlord, plaintiff QSI, to enter into a Landlord Waiver and Agreement (Landlord Agreement).

Quality's business was not successful, and it filed bankruptcy. Thereafter, pursuant to its Landlord Agreement with GE Capital, QSI served notice on GE Capital to remove its equipment from QSI's building.

GE Capital did not remove the equipment for more than a year. According to QSI, such failure made the premises unrentable to another tenant.[1]

---

1. In earlier proceedings, I ruled that GE Capital is liable for its failure to remove the equipment

Not receiving rental income from either Quality or a successor tenant, QSI defaulted on the note and mortgage it had given to Bridger. Bridger, in the meantime, had transferred QSI's note and mortgage to BACM 2001–1 Central Park West, LLC (BACM).

Rather than foreclose on the QSI premises, BACM took a deed in lieu of foreclosure.

QSI brought this suit to recover damages from GE Capital for its failure to have removed the equipment from QSI's premises. QSI's complaint sought declaratory and injunctive relief (to have the equipment removed) and asserted three claims for monetary damages: 1) breach of the Landlord Agreement; 2) unjust enrichment; and 3) trespass. Subsequent removal by GE Capital of the equipment has mooted the claims for declaratory and injunctive relief.

According to BACM, it did not learn of the pendency of this litigation and QSI's claim for monetary damages against GE Capital until after it had received QSI's deed in lieu of foreclosure. BACM claims that, as a result of certain terms and conditions of the Deed–in–Lieu of Foreclosure Agreement (Deed in Lieu Agreement), it, not QSI, is entitled to recover on those claims.

In essence, BACM contends that the Deed In Lieu Agreement included a transfer of QSI's claims from QSI to BACM. QSI disagrees, and contends that the Deed in Lieu Agreement, which does not expressly mention the claims against GE Capital, did not transfer those claims from it to BACM.

BACM filed a motion for leave to intervene or to be substituted in place of QSI as the plaintiff. BACM has been granted leave to intervene; its request to be substituted as party plaintiff is still pending.

In addition, GE Capital has filed its second motion for summary judgment. In that motion, GE Capital contends that, as a result of certain terms and conditions in the mortgage which QSI gave to Bridger, QSI is not a real party in interest.

in a timely manner. The issue of the damages resulting from such failure remains to be adjudi-

For the reasons that follow, I conclude that QSI did not transfer its claims against GE Capital to QSI in the Deed in Lieu Agreement. The motion to substitute shall, accordingly, be denied. I also conclude, without adjudicating the merits of GE Capital's contentions about the underlying mortgage, that GE Capital's second motion for summary judgment should be denied.

### Discussion

### A. BACM's Motion to Substitute

█ BACM bases its demand for substitution on Rule 25(c) of the Federal Rules of Civil Procedure, which provides:

> Transfer of Interest. In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

█ This rule applies only where the transfer of interest occurs during the pendency of the litigation, and not where the transfer occurred prior to the litigation began. *See Andrews v. Lakeshore Rehabilitation Hospital,* 140 F.3d 1405, 1407 (11th Cir. 1998).

The merits of BACM's contention that, pursuant to Rule 25(c), it alone is entitled to pursue the damages claim against GE Capital depend entirely on the Deed in Lieu Agreement. This is so because whatever rights QSI may have transferred in its mortgage to Bridger, which that firm in turn assigned to BACM, were transferred prior to the commencement of this suit.

Section 1(a) of the Deed in Lieu Agreement required QSI to convey to BACM "all of [QSI's] right, title and interest in and to the Project, all personal property of [QSI] located on or at the Project and any easements, licenses or other arrangements with respect to adjacent properties that benefit the Project, ...."

Section 1(a) of the Deed in Lieu Agreement has seven subsections, which described

cated.

"without limitation" the property being conveyed by QSI to BACM. BACM contends § 1(a)(vii) conveyed the claims at issue in this case to it. That provision conveys:

All intangible property *used* by [QSI] and/or Quality in connection with the development, use and operation of the *Project,* including, without limitation, plans and specifications, reports, permits, licenses, certificates of occupancy, development rights, warranties, guaranties, telephone exchanges, trademarks and the name of the Project (collectively, the "Intangible Property").

(Emphasis added).

Section 1(b) of the Deed in Lieu Agreement states that the "foregoing assets and properties" (i.e., the assets and properties listed in § 1(a) and its subsections) "are hereinafter collectively referred to as the 'Project.' "

QSI argues, and its argument is persuasive, that the claims against GE Capital at issue in this suit—which are for damages for breach of contract, unjust enrichment and trespass—are not "intangible property used" by it "in connection with the development, use and operation of the Project." Consequently, the Deed in Lieu Agreement did not convey the claims to BACM. Most simply put, the claims against GE Capital were not "used" by QSI. Thus, they are not covered and were not conveyed by § 1(a)(vii) of the Deed in Lieu Agreement.

■ BACM also contends, in the alternative, that § 9(*l*), one of fifteen subsections under the "Representations and Warranties of Borrower" (i.e., QSI) in the Deed in Lieu Agreement, transferred the claims to it. That subsection provides, in pertinent part:

*Borrower intends to transfer and convey to Lender all of Borrower's right, title and interest in and to the Project.* and this transaction is not intended as a mortgage, trust conveyance, deed of trust or security instrument of any kind. After the Closing, Borrower will not have any further interest (including rights of redemption) or claims in and to the Project or to the proceeds and profits that may be derived therefrom. *The Project being transferred to Lender represents all of the property, real personal, owned by Borrower* and after the Closing Borrower shall have no debts or liabilities to any party.

(Emphasis supplied).

Section 9 and its subsections, including § 9(*l*), cannot, however, be read as BACM would have it read. According to BACM, § 9 expands the description of the property being conveyed, as set forth in § 1(a), to include the claims at issue in this case.

This reading ignores the caption to § 9— "Representations and Warranties"—and the role of those representations and warranties in the transaction. Section 9 and its subsections assure BACM that QSI owns the property being conveyed, and that such property is free and clear of encumbrances, claims, obligations, judgments, and other impediments.

Section 9(*l*), which assures BACM that QSI intends to and is transferring all its property, real and personal, does not convey such property—that is the function of § 1(a). Section 9(*l*) is, rather, simply a promise that QSI intends to convey, and is conveying all its property.

BACM may well believe that this representation and warranty was broken. And it may well have a viable cause of action on the basis of such breach. But that inchoate claim, which is not presently a part of this lawsuit, does not entitle BACM to displace QSI as the plaintiff in this case.

BACM has been allowed to intervene; its interests are, accordingly, protected by is status as a party. But the Deed in Lieu Agreement does not entitle BACM to be the sole plaintiff in this suit.

### B. GE Capital's Motion for Summary Judgment

GE Capital contends that, by virtue of provisions of the mortgage given by QSI to Bridger, QSI is not a real party in interest, and cannot bring its claims against GE Capital. In essence, GE Capital asserts that the mortgage and underlying note assigned whatever claim QSI may now have against it to the mortgagee. Thus, according to GE Capital, only the mortgagee (or, in this in-

stance, the assignee of the mortgagee—namely BACM) can assert the claims.

If so, that is a contention that properly should be made by BACM, rather than GE Capital, which has been held to be liable for its failure to have removed its equipment from the facility. In light of the conflicting contentions of QSI and BACM about the interpretation of the mortgage and related documents, uncertainty exists as to who is entitled to be compensated. GE Capital is not, however, at risk of multiple judgments. Once damages have been determined, GE Capital can satisfy the resulting judgment by paying it into escrow.

To a considerable extent, the remaining issues regarding the mortgage have been discussed in the briefs relating to the pending motions. On review of those briefs, I conclude, however, that the dispute between QSI and BACM about the effect of the mortgage and related documents is not ripe for adjudication.

Before those issues can be litigated, BACM needs to present those issues in a complaint against QSI.[2] Until that occurs, any opinion that I might give as to the meaning of the mortgage and the related, unresolved issues (aside from my determination that the Deed in Lieu Agreement did not convey the claims) would be advisory. There is no case or controversy as to those issues until they are joined in a procedurally proper manner.

In light of the foregoing, GE Capital's motion for summary judgment shall be overruled.

### Conclusion

The Deed in Lieu Agreement did not convey the claims at issue in this case to BACM. Determination of the remaining dispute between QSI and BACM must await further pleadings and proceedings. The need for such further proceedings does not create any risk to GE Capital: the claims against it are being pursued by real parties in interest, and its second motion for summary judgment shall be overruled.

**2.** BACM has made no such claim thus far: the claims it asserts in its amended and supplemen-

It is, therefore,

ORDERED THAT:

1. The motion of BACM 2001–1 Central Park West LLC for substitution be, and the same hereby is denied; and

2. The second motion of General Electric Capital Business Asset Funding Corporation for summary judgment be, and the same hereby is denied.

So ordered.

tal complaint are against GE Capital, not against QSI.